Mario Pittoni, J.
The Town of Hempstead seeks to enjoin the defendants from conducting a summer day camp on its North Merrick premises, and also from advertising, soliciting or accepting deposits for its day camp activities. The basic reason given for the injunction is that the premises are located in a residential “B” zone in which day camps are prohibited (Building Zone Ordinance of Town of Hempstead, §§ B-1.3, B-1.3a). This ordinance does permit public, private and parochial schools chartered by the State Board of Regents in residential ‘ B ” zones. Day camps, however, may be conducted in business zones upon permission of the Town Board of Appeals (Town Ordinance, §§ Z-5.0c-13).
It appears that on May 25,1956 the enterprise conducted by the defendants was granted a provisional charter by the State Board of Regents, and that on April 25, 1958 this charter was amended by the Board of Regents to authorize the defendants to maintain an elementary school.
It was also established that the curriculum for the summer session of 1958 is the same as that for the summer session of 1956 and 1957 with respect to children of nursery school and kindergarten age, A study of the exhibits also establishes that the prospective nursery school and kindergarten curriculum for the summer of 1958 is the same as the previous spring and fall semesters.
Be that as it may, the town does not seek an injunction as to the children of nursery school age. Therefore, further discussion will be limited to children of kindergarten age and those in the 7 to 8 age group.
Let us first analyze the problem in respect to the 4% to 6% age, or kindergarten group. Neither side gave this court any authoritative standards to distinguish a school from a day camp. The court has been forced to grope for the answer on its own and to seek the answer from the circumstantial evidence introduced at the trial.
The court finds that the defendants will operate a summer kindergarten school and not a summer day camp for the 4%-to 6%-year-old children. The curriculum for the summer session is the same as in the previous summers and is the same as in the *371 previous fall and spring semesters. The curriculum is full, varied and in keeping with the State Department of Education recommendations; in fact, a booklet issued by the State Department of Education, “ Children Learn at Kindergarten,” establishes the close analogy between its recommendations and the kindergarten activities and policies of the defendants. In this respect, Dr. Carroll Adams, of Columbia University, who testified for the town, gave his opinion that kindergarten training should be limited to 3 hours a day. His reason was that longer periods lessen the learning receptivity of such infants. After that he said it was just baby sitting. However, he did admit that to be only his opinion, and he did not dispute the opinion stated in the Department of Education booklet which said that 5 hours a day could be utilized for kindergarten education.
Another factor to be considered is that although Dr. Harry Gross, District Superintendent of Schools of the second district, another witness on behalf of the town, said that no certification was required of teachers in private schools, 25 out of 37 teachers for the defendants’ 1958 summer session are certified either by New York State or by New York City. This is different from the usual day camp as described by Dr. Adams. He mentioned camp counselors as the bulwark of day camps. This is in contrast to the present situation where certified teachers predominate at the defendants’ summer session.
There was further evidence from a Mrs. Brubacker, an expert called on behalf of the defendants. Her opinion was that the defendants operated a kindergarten school. Dr. Joel Stark, an instructor at Hofstra and City Colleges, and also at the defendants’ school, testified as to the speaeh correction instructions which he and the rest of the teaching staff conducted among the pupils. Dorothy Knebel, another teacher at the defendants’ institution, gave a recorded demonstration of how this speech correction course is conducted.
The main “weapon” used by the town Avas plaintiff’s Exhibit 6 — a cover letter and a brochure entitled “Merrick Woods Camp ’ ’ Avhich Avent into great detail expounding the benefits of its ‘ ‘ Camp Life ’ ’ and ‘ Camp. ’ ’ These documents diminished in the court’s opinion the value of defendant Adeline Bannett’s testimony. They Avere out-and-out solicitations for a day camp. She testified that although in her opinion her institution Avas a school, she felt impelled to issue these documents because of the aversion of some parents and children to school or formal education in the summertime; and that advertising her establishment as a summer day camp Avould make it *372 more attractive to many parents and children. We have not yet reached the stage where some private individuals may unknowingly force education upon others.
At first the court was inclined to hold that since the defendants represented themselves as a day camp, they are bound by their own classification. However, the evidence adduced at the trial showed otherwise in respect to the kindergarten activities and curriculum. It must be added that this misrepresentation was far from commendable. A misrepresentation to induce enrollment is just as improper as a misrepresentation to induce a sale. However, since the cause of action in this case is not based on this theory, the court leaves this point with the admonition that the defendants must never do this again.
In short, the defendants have established to the satisfaction of this court, on the evidence adduced at this trial, that they will operate a kindergarten school in the Summer of 1958. This has been established even though the burden of proof was on the town to prove otherwise.
As for the 7 to 8 age group, insufficient evidence was introduced to establish it as part of a school. In fact, the defendants conceded for the record that as far as the 1958 summer program is concerned, the 7 to 8 age group was in a summer camp classification. However, the defendants claim that they have a constitutional right to have a day camp in a residential district. They cite Incorporated Vil. of Lloyd Harbor v. Town of Huntington (4 N Y 2d 182); Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton (1 N Y 2d 508) and other cases as authority. However, the Lloyd Harbor case was a contest between two governmental bodies to decide whether the town could use its town-owned property within the village residential confines for public beaches and parks. This was for the public good. This is a far cry from saying that a private commercial enterprise has a constitutional right to operate a private recreational facility, available only to fee-paying patrons, in a residential zone. Whereas adjoining landowners and residents may have to submerge some of their comfort and quietude to the public good, the same sacrifices may not be demanded for the good or gain of private individuals. The due process and equal protection clauses of our Constitutions cannot be strained to any such conclusion. Furthermore, to hold otherwise would open the doors to theatres, restaurants, gymnasiums, merry-go-rounds, beach clubs and private swimming pools for pay in residential areas. Are they not recreational, health-giving, educational, and otherwise beneficial to their patrons 1
*373 As for the Diocese of Rochester and similar cases, the accessory uses mentioned therein are different from the day camp situation in this case. The accessory uses mentioned therein pertain to the year-round accessory use to the primary, religious activities in those edifices and on those lands. What primary use exists at this time to help constitute the 7 to 8 age group day camp on the defendants’ premises as an accessory use? The 7 to 8 age group activity conducted by the defendants is just a pure, unconnected summer day camp activity.
The attempt by the defendants to liken their powers and privileges to that of public school district boards fails on the mere mention. Public school district boards are public bodies duly elected by the people of their districts to exercise the many governmental and legislative powers and privileges granted to them by the State Legislature in districts created by State authority.
In conclusion, the court directs that the defendants be permanently enjoined from using the words “ Camp,” “ Day Camp,” and “ Summer Camp ” in their solicitations, literature, advertising, signs and patrons’ clothing, and from conducting a summer day camp for children 7 to 8 years of age or over. In these respects the injunctive relief requested by the Town Board in the complaint is granted. However, since the town has failed to prove that the activity conducted by the defendants in respect to the kindergarten ages 4% to 6% was in the category of a day camp, the complaint is in the latter respect dismissed.
This is the decision of the court pursuant to section 440 of the Civil Practice Act.
Submit judgment.